IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Canopius US Insurance, Inc., | ) | Civil Action No.: 4:12-cv-3316-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Frank Keefe and Ashley Griffin, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Canopius US Insurance, Inc. ("Canopius" or "Plaintiff") filed this declaratory judgment action on November 19, 2012 seeking a judicial determination of no coverage. *See* Compl., ECF No. 1. Canopius asserts that coverage is excluded pursuant to a "voluntary labor" exclusion included in the disputed policy. *See* Compl., ECF No. 1. Defendant Frank Keefe ("Keefe") answered and counterclaimed on January 14, 2013, asserting that either coverage is not excluded or estoppel bars the operation of the exclusion, and that Canopius therefore has a duty to defend and/or indemnify. *See* Ans. and Countercl., ECF No. 6. Default has been entered against Defendant Ashley Griffin ("Griffin"). *See* Clerk's Entry of Default, ECF No. 26.

This matter came before the Court on the motion for summary judgment of Canopius, filed on August 27, 2013, and the motion for summary judgment of Keefe, filed on September 25, 2013. *See* Pl.'s Mot., ECF No. 15; Def.'s Mot., ECF No. 16. A hearing was held before the undersigned on February 2, 2014. Present at the hearing were Paul D. Greene on behalf of Canopius, and Brown W. Johnson and H. Steven Deberry, IV on behalf of Keefe. For the reasons stated below, the Court grants in part and denies in part Canopius's motion for summary judgment, and denies Keefe's motion for summary judgment in its entirety.

#### FACTUAL BACKGROUND

This lawsuit arises out of a January 30, 2012 accident in which Keefe suffered injuries. Keefe is retired from logging and sawmill operations, having been in that business for 60 years. Dep. of Frank Keefe, ECF No. 15-6 at 6:12–7:9. Keefe has known Griffin since he was a boy, and Griffin has performed various jobs for Keefe over the years. Dep. of Ashley Griffin, ECF No. 15-7 at 5:24–6:18. When Griffin decided to start a tree service, Keefe advised him on how to get started. *Id.* at 41:10–14. Keefe assisted Griffin in passing along information about potential jobs, and Griffin would dump brush and logs on Keefe's land so Keefe could sell them or use them in his logging business. *Id.* at 9:1–21; Frank Keefe Aff., ECF No. 16-2 at ¶ 5. Both Griffin and Keefe described this dynamic as an ongoing business relationship. *See* ECF No. 15-7 at 9:20–21; Frank Keefe Aff., ECF No. 16-2 at ¶ 6.

Some time prior to the January 20, 2012 accident, Keefe learned of a tree cutting job in the Town of Pamplico. *See* ECF No. 16-2 at ¶ 8. Keefe mentioned Griffin to the contact, and also informed Griffin of the job. *Id.* Keefe knew that, in order to perform such a job within the limits of the Town of Pamplico, Griffin would need a business permit and liability insurance. *Id.* Therefore, Keefe took Griffin to the Ed Smith Agency, an agency with which Keefe had done business with before, to obtain the needed coverage. *Id.* at ¶ 9. Ultimately coverage was secured from Canopius. Keefe paid the initial premium on the policy and for the Town of Pamplico business permit. *Id.* at 12.

The policy issued to Griffin contained an exclusion entitled "EXCLUSION – VOLUNTARY LABOR." *See* ECF No. 15-4 at 22. This provision states that "[t]his insurance does not apply to 'bodily injury' . . . to any member, associate, affiliated member, or to any person or persons loaned to

2

or volunteering services to you, whether or not paid by you, arising out of or in the course of work performed for you or on your behalf."  *Id.*  "Volunteering services" is not defined in the policy.

After obtaining the insurance policy and business license, Griffin began working on the job that Keefe had found.  ECF No. 16-2 at ¶ 13.  Keefe was present while this job was performed, and indicated that he believed Griffin's worker cut one of the trees incorrectly.  Dep. of Frank Keefe, ECF No. 16-5 at 21:12–21; ECF No. 15-7 at 22:14–17.  While Griffin was working on the first job, another homeowner approached Griffin about having some trees taken down.  ECF No. 16-2 at ¶ 13.  On January 30, 2012, Griffin began this second job, and Keefe again attended.  *See* ECF No. 16-2 at ¶ 14; ECF No. 16-5 at 21:22–22:7.  Keefe testified he was talking with the owner of the property, and told him that Griffin's worker, in Keefe's estimation, was not performing his role properly.  *Id.* at 21:22-22:7.  Keefe then spoke to the worker and asked if he could make the cut.  *Id.* at 23:4–24:6.  While the worker initially refused, Keefe told him "no, let me do it" and took control of the chainsaw.  *Id.*  Keefe made the cuts to the tree while Griffin's worker attached a cable, which was itself attached to a backhoe driven by Griffin.  ECF No. 15-7 at 23:9–22, 25:1–26:22.  When Griffin's worker gave him the go ahead, Griffin began pulling the tree with the backhoe.  *Id.* at 25:1–26:22.  As Griffin pulled the tree to the ground, it struck Keefe and caused him injury.  *Id.* at 26:11–26:22.  Griffin testified that he paid Keefe $300.00 to dump the brush from this job on Keefe's land.  *Id.* at 61:1–10.

Canopius instituted the present declaratory judgment action seeking a judicial determination of no coverage.  It submits that Keefe was volunteering services to Griffin, and thus coverage is excluded under the terms of the policy.  Canopius further contends that equitable estoppel is not applicable in this case.  Keefe disagrees on both counts.  First, Keefe submits that he was not "volunteering services" to Griffin at the time he sustained his injuries, and therefore the voluntary

3

labor exclusion does not apply. Second, Keefe contends that Canopius is estopped from asserting the exclusion to bar coverage.

### SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In this case, the moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a

4

genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

## DISCUSSION

As an initial matter, the Court notes that Keefe has not argued that the exclusion is ambiguous or void as a matter of public policy. The Court agrees and finds that the exclusion is valid and enforceable. Accordingly, the only issues for the Court are: (1) whether the exclusion operates to bar coverage, and (2) if the exclusion does apply, whether estoppel operates to bar its operation.

**I.      Duty to Defend**

The Court first notes that the Complaint asserts that Canopius has no duty to defend in this action because coverage is excluded, while the Answer asserts that there is a duty to defend. *See* ECF No. 1 at ¶ 13; ECF No. 6 at ¶ 27. "[U]nder South Carolina law, '[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the [underlying] complaint.'" *Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC*, 763 F. Supp. 2d 769, 776 (D.S.C. 2011) (quoting *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009)). The duty to defend is broader than the duty to indemnify.

5

*Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 457 (D.S.C. 2011). The underlying complaint has not been introduced into the record by either party, but Canopius's counsel has advised that they have been defending the underlying matter under a reservation of rights. As neither party has afforded the Court with a copy of the underlying complaint, and as the Court has determined, as detailed below, that there is a genuine issue of material fact as to whether Keefe was volunteering services, Canopius's motion for summary judgment is denied as to the duty to defend.

## II.     Estoppel

The Court will address the applicability of estoppel first. The general rule in South Carolina is that estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect the rights reserved therein. *First Fin. Ins. Co. v. Brumbaugh*, No. 12-2452, 2014 WL 57558, at *3 (4th Cir. Jan. 8, 2014) (quoting *Pitts v. N.Y. Life Ins. Co.*, 148 S.E.2d 369, 371 (S.C. 1966)). While there are exceptions to this general rule, those exceptions are narrow and are not applicable to the present circumstances. *See, e.g.*, *Jost v. Equitable Life Assurance Soc'y of the U.S.*, 248 S.E.2d 778, 780 (S.C. 1978) (applying estoppel where the insurer knew coverage had expired but nevertheless demanded and collected premium payments from the insured); *Pitts*, 148 S.E.2d at 372 ("Where the insurer over a long period of time after the date prescribed by it for the termination of a particular coverage has continued to demand, accept and retain the premium fixed by it for that coverage, it may be reasonably inferred that the insured, who in the normal course of things relies upon the insurer's billing, has been misled by such conduct to believe that the insurer has continued to accept the coverage."). The evidence in the record demonstrates that this situation does not fall within the exception to the general rule that coverage may not be extended via estoppel. Nothing in the record indicates that Canopius continued to demand and collect premium payments

where coverage was no longer in effect. Accordingly, the Court declines to apply estoppel to bar application of the voluntary labor exclusion.

Further, even if this were a situation where estoppel could apply, the Court finds that Keefe has failed demonstrate that the necessary elements are met.[1] Estoppel requires the following:

> [A]s related to the party estopped [the elements] are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Liberty Mut. Ins. Co. v. Westport Ins. Corp.*, 664 F. Supp. 2d 587, 594 (D.S.C. 2009) (quoting *Boyd v. BellSouth Tel. Tel. Co.*, 633 S.E.2d 136, 142 (S.C. 2006)). As outlined in Canopius's memorandum and oral argument, Keefe has presented no evidence in the record that Canopius, or any agent of Canopius, undertook any conduct that amounted to a false representation or concealment of material facts, with or without the intention or expectation that the conduct be acted on by Griffin or Keefe. All of the factual allegations regarding procurement of the coverage concerned purported representations made by the Ed Smith Agency, which is a broker for the *insured*, not a captive agent for Canopius or any other insurer, *see* ECF No. 15-8 at 14:2–18. Moreover, there is no evidence in the record that either Keefe or Griffin relied on any conduct by Canopius or any agent of Canopius, or that their reliance resulted in a prejudicial change of position. Thus, even if estoppel was available as

---

[1] As the Plaintiff noted in its argument at the hearing, it is questionable as to whether Keefe can assert estoppel as a third party, as he is not the policyholder. However, the court need not address this as it finds that even the policyholder, Griffin, could not assert estoppel in this case.

a remedy for Keefe, he has failed to present any evidence establishing several of the necessary elements.

### III.     Operation of the Exclusion

"Although exclusions in an insurance policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999) (citations omitted). An insurance policy may contain exclusions, tailored to the business of the particular insured, designed to limit the insurer's risk exposure from hazards peculiar to that business. *Id.* at 330 (quoting Couch on Insurance 3d, § 130:14 (1997)). An insurer's obligation under a policy of insurance is defined by the terms of the policy itself, and cannot be enlarged by judicial construction. *Id.* (citing *Nationwide*, 479 S.E.2d 524). Courts must enforce, not write, contracts of insurance, and must give the policy language its plain, ordinary, and popular meaning. *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999) (citing *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524 (Ct. App. 1996)). Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. *Id.* (citing *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912 (S.C. 1995)). However, if the intention of the parties is clear, courts should not torture the meaning of policy language to extend or defeat coverage that was never intended by the parties. *Id.* (citing *Diamond State*, 456 S.E.2d 912).

As previously noted, the Court finds that the voluntary labor exclusion is valid and enforceable. Keefe has not argued that the exclusion is void or unenforceable as against public policy or in contravention of a statute. Thus, the only remaining question for the Court is whether

the exclusion applies to bar coverage. Considering the arguments of counsel and all of the evidence in the light most favorable to Keefe, the Court believes that Keefe has presented sufficient evidence upon which a jury could find that he was not "volunteering services." There is certainly a genuine issue of material fact regarding whether Keefe was "volunteering services" such that the voluntary labor exclusion would apply.

In particular, Keefe argues that in assisting Griffin he was acting in his own interest. It is undisputed that Keefe allowed Griffin to dump trash on his property for a fee. For the specific job in which Keefe was injured, Griffin paid Keefe $300 to dump the debris from the tree on his property. In addition, Griffin gave Keefe logs from trees that he cut, and Keefe used the logs in his sawmill operation. Keefe assisted Griffin in findings jobs and helped Griffin get his tree service started, and both parties described their relationship as an ongoing "business relationship." A rational jury could certainly find that in assisting Griffin in this manner, Keefe was not merely "volunteering services," finding that Keefe had a direct interest in assisting Griffin, or that the parties longstanding business relationship rendered Keefe something other than a mere volunteer.

The Court also finds for similar reasons that Keefe's motion for summary judgment should be denied.[2] A jury could also find that by unilaterally injecting himself into Griffin's operation Keefe was "volunteering" his services.

---

[2] The Court notes that Plaintiff filed its Motion for Summary Judgment on August 27, 2013, which was the deadline for filing dispositive motions according to the Court's scheduling order. Pursuant to DSC Local Rule 7.06, Defendants had fourteen days from the service of Plaintiff's motion in which to respond. Defendant Keefe filed what was styled a "Notice and Motion for Summary Judgment in Favor of Frank Keefe and Memorandum Opposing Plaintiff's Motion for Summary Judgment" on September 25, 2013. This filing, therefore, was beyond both the deadline for filing dispositive motions and for responding to Plaintiff's Motion for Summary Judgment. The Court, however, considered Plaintiff's filing at the hearing and in ruling herein, and in light of its determination that

The Court believes there is a genuine issue of material fact as to whether Keefe was "volunteering services" as contemplated by voluntary labor exclusion in the policy. Accordingly, both motions for summary judgment are denied as to the issue of applicability of the voluntary labor exclusion.

## CONCLUSION

The Court has thoroughly reviewed the entire record, including Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion, Plaintiff's Reply to Defendant's Response, and the applicable law. For the reasons stated above, the Court grants summary judgment in favor of the Plaintiff as to the applicability of estoppel and denies summary judgment for both parties on the issue of whether coverage is excluded based on the "voluntary labor" exclusion. Based on the jury's determination regarding the voluntary labor exclusion, the Court would enter judgment for the appropriate party on the duty to defend and the duty to indemnify consistent with the jury's determination.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion is **GRANTED** on the issue of estoppel, and the Court finds that estoppel does not apply in this case. Plaintiff's motion is **DENIED** as to the issue of whether coverage is excluded by the "voluntary labor" exclusion. Keefe's motion is **DENIED** in its entirety.

---

there is a genuine dispute of fact as whether coverage is excluded, Plaintiff's untimeliness argument is moot.

**IT IS SO ORDERED.**

                                                s/ R. Bryan Harwell  
                                                R. Bryan Harwell  
                                                United States District Judge

Florence, South Carolina  
February 14, 2014